UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE GRAYBILL, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 2:15-CV-02462 |
| | ) | |
| v. | ) | JUDGE ALGENON L. MARBLEY |
| | ) | |
| KSW OILFIELD RENTAL, LLC, | ) | MAGISTRATE JUDGE KEMP |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR CONDITIONAL CERTIFICATION AND COURT-
AUTHORIZED NOTICE AND MEMORANDUM IN SUPPORT THEREOF**

Defendant KSW Oilfield Rental, LLC ("KSWR") files this Response to Plaintiff Kyle Graybill's ("Graybill") Motion for Conditional Certification and Court-Authorized Notice and Memorandum in Support Thereof (the "Response"), and would respectfully show the Court as follows:

**I.      INTRODUCTION**

Graybill proposes to conditionally certify a class based on "all present and former non-exempt employees of [KSWR] . . . who worked as field technicians or service technicians or similar job titles[.]" Pl.'s Mot. at ¶ (b). However, his Motion for Conditional Certification and Court-Authorized Notice (the "Motion") and the Memorandum in Support thereof (the "Memorandum"), offers no evidence that the referenced technicians are "similarly situated." Accordingly, Graybill has failed to meet his burden entitling him to conditional certification, and his Motion should be denied.

**II.      FACTUAL BACKGROUND**

Graybill filed his Collective Action Complaint on June 26, 2015, alleging various violations of the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards

1

Act ("OMFWSA") (Ohio Rev. Code An.. § 4111.03), and the Pennsylvania Minimum Wage Act ("PMWA") (34 Pa. Cons. Stat. §§ 231.41-.43). *See* Pl.'s Compl. at ¶ 1. On October 13, 2015, Graybill filed his Motion and Memorandum seeking conditional certification of an FLSA collective action class for "all present and former non-exempt employees of Defendant during the period three years preceding the commencement of this action to the present who worked as field technicians or service technicians or similar job titles[,]" and requesting that notice of the lawsuit be sent to such individuals.[1] Pl.'s Mot. at ¶¶ (b)–(c).

Graybill alleges that KSWR "systematically" edited field technicians' time-records, reduced their paid time, failed to include all of their travel time between job sites, and violated the PMWA by using the "fluctuating workweek method" to calculate Plaintiff's overtime. *See* Pl.'s Mem. at pp. 1–2. Graybill argues that "[o]ther current and former employees who were subjected to these practices should be given notice" of the lawsuit. *Id.* at p. 2. However, Graybill's Memorandum provides no evidence that "all present and former" field and service technicians were subject to the complained of practices.

The Declaration of Kyle Graybill, attached as Exhibit B to the Memorandum, alleges that "Manager John Young frequently edited time from [Graybill's] timesheet, when, for example, [Young] thought a job took longer than he believed it should have." Pl.'s Mem. at Ex. B, ¶6. Graybill further alleges that he is "aware [of] many other field/service technicians whose time was also edited down." *Id.* However, Graybill failed to identify anyone by name in his Declaration. *See id.* When pressed, during his deposition, Graybill could only name three other field/service technicians whose time was allegedly edited down by John Young—Zach Ritter,

---

[1] The positions of field technician and service technician are essentially the same and serve the same job functions. *See* Exhibit A, Deposition of Kyle Graybill, at 17:17–18:8. Accordingly, for purposes of this Response, the terms field technician and service technician may be used interchangeably. Field and/or service technicians may also be referred to simply as "technicians."

Marco Beltran, and Joe McKesson—and could name no other managers that edited technicians' timesheets. *See* Exhibit A, Deposition of Kyle Graybill, at 42:17–43:1; 43:18–20.

Contrary to Graybill's allegations, Beltran and McKesson both maintain that Young never edited their time sheets or prevented them from documenting all the hours that they worked. *See* Exhibit B, Declaration of Marco Beltran, at ¶ 3; Exhibit C, Declaration of Joseph McKesson, at ¶ 3. Beltran and McKesson similarly deny that they ever saw Young edit anyone's timesheets or ask anyone to write off their hours. *See* Ex. B at ¶ 4; Ex. C. at ¶ 4. Graybill also alleges that field/service technicians' time "was rounded down to the nearest half-hour, in KSW's favor." *See* Pl.'s Mem. at Ex. B, ¶ 6. But, during his deposition, Graybill could only identify one other person who he thought had his time rounded down to the nearest half hour, Zach Ritter. *See* Ex. A at 55:8–13. In addition, Beltran and McKesson deny that they were instructed to round down their hours to the nearest half hour and instead, maintain that they were never instructed one way or another as to whether or how to round their time. *See* Ex. B at ¶ 5, Ex. C at ¶ 5. The declarations from two of the three allegedly similarly situated technicians highlights the lack of evidence supporting Graybill's claims, and demonstrates that his attempt to obtain conditional certification is an improper fishing expedition.[2] *See Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 799 (E.D. La. 2007) (quoting *Lentz,* 491 F.Supp.2d 663, 670–71, 2007 WL 1628853, at *3 (N.D.Tex.2007) ("[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses.")

---

[2] Graybill's Declaration is noticeably silent as to the allegation that "KSW failed to pay employees for all of their travel time between job sites as the FLSA requires." *See* Pl.'s Mem. at p. 11. However, during his deposition, Graybill's allegations concerning travel time did not relate to travel "between job sites." Instead, Graybill's primary allegation regarding travel time is that he was not paid for the time he traveled from his home to the shop in Pennsylvania, and from the shop back to his home or, as the case may be, from his home to Strasburg (where the "yard" was located) and from Strasburg back to his home. *See* Ex. A. at 46:20–48:12. Nothing in Graybill's Declaration or his deposition testimony indicates that KSW failed to pay employees for all travel time "between job sites."

3

Finally, Graybill alleges in his declaration that he was "never paid 1.5x [his] hourly rate for hours worked over 40 in a workweek." *See* Pl.'s Mem. at Ex. B, ¶ 8. Graybill also attached as Exhibit A to the Memorandum a pay stub that purportedly demonstrates that he was not paid 1.5 times his hourly rate for hours worked over 40. In his deposition, Graybill alleged that all field/service technicians were compensated in a similar manner. *See* Ex. A at 57:11–17. However, Graybill has failed to demonstrate, or even allege, that this is violation of the FLSA. While he alleges that KSW's overtime method is a violation of Pennsylvania law, as discussed in more detail below, Graybill has failed to demonstrate or even allege that all field/service technicians are covered by Pennsylvania law. Consequently, Graybill has failed to demonstrate that all field/service technicians are "similarly situated."

### III.     ARGUMENT

To obtain conditional certification, a plaintiff must demonstrate that he is "similarly situated" to the potential class members. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). While the test for conditional certification under the FLSA is less stringent than a Federal Rule of Civil Procedure 23 class certification, a plaintiff must at least make a "'modest factual showing' that [he is] similarly situated to the other potential plaintiffs whom [he] seek[s] to notify of the collective action." *Sisson v. OhioHealth Corp.*, No. 2:13-CV-0517, 2013 WL 6049028, at *2 (S.D. Ohio Nov. 14, 2013) (quoting *Harrison v. McDonald's Corp.,* 411 F.Supp.2d 862, 865 (S.D. Ohio 2005)). The plaintiff "must present some *evidence* to support allegations that others are similarly situated" and establish a "colorable basis" for his claim that others are "similarly situated" before the employer should be subjected to the burdens of a collective action. *Id.*  Further, conditional certification and Court-authorized notice should not

function as a mere fishing expedition. *See, e.g., Rappaport v. Embarq Mgmt. Co.*, No. 6:07-cv-468-Orl-19DAB, 2007 WL 4482581, at *5 (M.D. Fla. Dec. 18, 2007).

### A. Graybill Failed to Meet His Burden to Show that He and the Proposed Class of Employees are "Similarly Situated."

"In assessing whether Plaintiffs have met their initial burden to establish a 'factual basis for the allegation of class-wide FLSA violations,' courts 'consider whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists.'" *Struck v. PNC Bank N.A.*, No. 2:11-CV-00982, 2013 WL 571849, at *3 (S.D. Ohio Feb. 13, 2013) (internal citations omitted) (quoting *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11-CV-593, 2012 WL 4463771, at *3 (S.D. Ohio Sept. 27, 2012)).

As discussed in Section I, supra, Graybill's Motion and Memorandum contains four allegations as to why all present and former field technicians or service technicians are "similarly situated"—(1) KSWR "systematically" edited field technicians time-records, (2) KSWR reduced field technicians' paid time (by rounding technicians' hours down to the nearest half hour), (3) KSWR failed to include all of the field technicians' travel time between job sites, and (4) KSWR violated the PMWA by using the "fluctuating workweek method" to calculate field technicians' overtime. *See* Pl.'s Mem. at pp. 1–2. KSWR will address each of these allegations. However, when considering the factors set out in *Struck*, it is clear that Graybill failed to meet his burden to demonstrate that he is "similarly situated" to the potential class members. *See Comer*, 454 F.3d at 546.

### *1. Graybill Failed to Demonstrate that All Field/Service Technicians are "Similarly Situated" with Respect to His Claim that KSWR Edited His Time Records.*

Graybill alleges that he was "aware [of] many other field/service technicians whose time was edited down." Pl.'s Mem. at Ex. B, ¶6. However, when pressed to name other field/service technicians whose time was allegedly edited, Graybill could only name Ritter, Beltran, and McKesson. *See* Ex. A at 42:17–43:1. Graybill failed to submit the affidavits or declarations of any of these individuals and it is now clear why. Beltran and McKesson both submitted their own declarations, which unquestionably refute Graybill's allegations that their time was edited, by Young or anyone else. Beltran and McKesson maintain that Young never edited their time sheets or prevented them from documenting their hours. *See* Ex. B at ¶ 3; Ex. C at ¶ 3. Beltran and McKesson also deny that they ever saw Young edit anyone's timesheets or ask anyone to write off their hours. *See* Ex. B at ¶ 4; Ex. C. at ¶ 4.

Graybill failed to submit even a single affidavit of a potential plaintiff in support of his allegation that KSWR edited technicians' time records. *See Struck*, 2013 WL 571849, at *3. Further, his own testimony refutes his allegation of a widespread discriminatory plan. *Id.* Other than Young, Graybill identified no other managers or supervisors that allegedly edited technicians' timesheets. *See* Ex. A at 43:18–20. Yet, his proposed class includes all former and present field and service technicians. Not all field and service technicians that worked for KSWR in the three years leading up to the commencement of this lawsuit worked under Young. *See* Exhibit D, Declaration of Chris Ramsey, at ¶ 4. In fact, out of the approximately 35 to 40 service technicians who worked in the Northeast region in the three years preceding the commencement of this lawsuit,[3] only about 10 to 12 worked under Young's supervision. *Id.* This certainly falls

---

[3] Young was not promoted to a management position until October 10, 2013. In addition, for the majority of time as manager, he supervised only the Strasburg, Ohio branch. *See* Ex. D at ¶ 3.

6

5157715v1

short of demonstrating that all present and former field technicians or service technicians are "similarly situated" and, instead, demonstrates the overbreadth of Graybill's proposed class.

   2. *Graybill Failed to Show that All Field/Service Technicians are "Similarly Situated" with Respect to His Claim that KSWR Rounded Down His Hours.*

Graybill alleges that field/service technicians' time was rounded down to the nearest half-hour, in KSW's favor. *See* Pl.'s Mem. at Ex. B, ¶ 6. As discussed, Graybill did not identify any potential plaintiffs in his Declaration and, during his deposition, Graybill only identified **one** other person—Zach Ritter—who believed his time was being rounded down to the nearest half hour. *See* Ex. A at 55:8–13. However, Graybill has not provided an affidavit or declaration from Ritter supporting this allegation.

Beltran and McKesson both deny that they were instructed to round down their hours to the nearest half hour. *See* Ex. B at ¶ 5, Ex. C at ¶ 5. To the contrary, Beltran and McKesson maintain that they were never instructed one way or another on whether or how to round their time. *See* Ex. B at ¶ 5, Ex. C at ¶ 5.

Like the previous allegation, Graybill failed to demonstrate a widespread policy requiring field/service technicians to round down their time, and the evidence suggests otherwise. More importantly, Graybill failed to demonstrate that all present and former field technicians or service technicians are "similarly situated" with respect to his claim that KSWR rounded down his time to the nearest half-hour.

   3.  *Graybill Failed to Show that KSWR Excluded His Own Travel Time Between Job Sites, Much Less that it Excluded the Other Field/Service Technicians' Travel Time.*

Graybill's Declaration does not address his allegation that "KSW failed to pay employees for all of their travel time *between job sites* as the FLSA requires." *See* Pl.'s Mem. at p. 11 (emphasis added). However, during his deposition, when Graybill was asked what travel time

7

5157715v1

KSW failed to compensate him for, it became clear that Graybill's allegations as to travel time **do not** relate to travel "between job sites." *See* Ex. A. at 46:20–48:12. Instead, Graybill's primary allegation regarding travel time is that he was not paid for the time he traveled from his home to the shop, in Pennsylvania, and from the shop back to his home or, as the case may be, from his home to Strasburg (where the "yard" was located) and from Strasburg back home. *See id.* Nothing in Graybill's Declaration or his deposition testimony supports his allegation that KSW failed to pay *him* for travel time "between job sites," much less all field and service technicians.[4] Consequently, the Court should not conditionally certify a collective action on this ground.

### 4. Graybill Failed to Demonstrate that All Field/Service Technicians are "Similarly Situated" with Respect to his "Fluctuating Workweek" Claim.

Graybill's Memorandum focuses largely on its claim that KSW used the "fluctuating workweek method" ("FWW") method of calculating overtime to compensate field/service technicians, in violation of Pennsylvania law. *See* Pl.'s Mem. at p. 10. Graybill argues that a PMWA claim may be certified in this case, pursuant to the Sixth Circuit's holding in *O'Brien v. Ed Donnelly Enterprises, Inc. See* Pl.'s Mem. at p. 10 (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 580 (6th Cir. 2009)). However, nothing in the *O'Brien* case indicates that a collective action may be conditionally certified on a state law claim alone, and KSWR was unable to find any cases that would support such a conclusion.

---

[4] Incidentally, travel from home to work is generally not considered "hours worked." *See* 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.") While there may be some instances when travel from home to work is overtime, for example, if an employee is required to travel a substantial distance to perform an emergency job, the regulations take no position "on whether travel to the job and back home by an employee who receives an emergency call outside of his regular hours to report back to his **regular place of business** to do a job is working time." *See* 29 C.F.R. § 785.36 (emphasis added). While not important for purposes of this reply, because Graybill's allegations are limited to travel time "between job sites," Graybill's deposition testimony does not demonstrate an FLSA violation.

8

The FWW method is approved by the FLSA in 29 C.F.R. § 778.114. The OMFWSA specifically incorporates the overtime provisions of the FLSA. *See* OHIO REV. CODE ANN. § 4111.03. Thus, use of the FWW method is permissible in Ohio and throughout most of the United States pursuant to the FLSA.

Unlike the FLSA, the PMWA does not have a collective action mechanism. *See* 43 PA. STAT. AND CONS. STAT. ANN. §§ 333.101 et seq. As demonstrated above, Graybill failed to demonstrate that other field/service technicians are "similarly situated" with respect to his three FLSA claims. Accordingly, even assuming his FWW allegations are true and are a violation of the PMWA, the Court cannot conditionally certify the collective action on this ground independently. *See id.*

However, even were the Court to consider this ground for certification independently of the FLSA claims, Graybill still failed to demonstrate that all field/service technicians are "similarly situated" with respect to his PMWA claim. Graybill alleges that all field/service technicians were compensated in a similar manner. *See* Ex. A at 57:11–17. However, Graybill has failed to demonstrate, or even allege, that all field/service technicians are covered by Pennsylvania law. The Northeastern region services rigs in Ohio and West Virginia, in addition to Pennsylvania, and KSWR also has operations in Oklahoma and Texas. *See* Ex. D at ¶ 2. Yet, Graybill's proposed class includes "all present and former non-exempt employees of [KSWR] . . . who worked as field technicians or service technicians or similar job titles," without regard for whether these individuals worked in Pennsylvania and were covered by Pennsylvania law. *See* Pl.'s Mot. at ¶ (b). Thus, Graybill has failed to show that all field and service technicians are similarly situated, with respect to this claim.

9

In addition, Graybill himself is not from Pennsylvania. *See* Ex. A at 7:7–19. For the duration of his employment, he resided in Massillon, Ohio. *Id.* He paid income tax in Ohio, not Pennsylvania, and did the majority of his work for KSWR—80-90%—in Ohio.[5] *Id.* at 21:10–22:15, 22:23–23:2. It is questionable whether Graybill even has a claim under the PMWA. However, he most certainly is not "similarly situated" to field and service technicians working out of Pennsylvania.

### B. KSWR Requests the Right to Coordinate the Contents of any Notification.

Graybill's proposed class cannot be certified on its face because he is not "similarly situated" to the proposed class members. *See Comer*, 454 F.3d at 546. However, in the unlikely event that the Court grants Graybill's Motion for Conditional Certification, KSWR respectfully requests the right to review and revise the proposed notice. If the parties are unable to agree on the contents of the notification, KSWR requests that the Court allow them to submit briefing to address any notification issues if necessary.

### IV. CONCLUSION

For the reasons stated in this Response, Defendant KSW Oilfield Rental, LLC respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification and Court-Authorized Notice. Alternatively, if the Court grants Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, Defendant KSW Oilfield Rental, LLC respectfully requests that the Court restrict the potential class to only those employees the Court determines are similarly situated to Graybill and allow USWS to coordinate with Graybill on the contents of any notification.

---

[5] There was a very brief period—approximately 1.5 months—during the entire duration of his employment in which he worked one week in Pennsylvania, then one week in Ohio; however, he then switched back to working primarily in Ohio. *See* Ex. A 23:6–24:15.

Respectfully submitted,

/s/ Stephen H. Lee

ALBERT J. LUCAS        (0007676)
(Trial Counsel)
JASON J. BLAKE        (0087692)
CALFEE, HALTER & GRISWOLD LLP
1200 Huntington Center-41 South High Street
Columbus, Ohio  43215
Telephone:  (614) 621-1500
Facsimile:  (614) 621-0010
alucas@calfee.com
jblake@calfee.com

STEPHEN H. LEE
HALEY A. PAUL
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone:  (713) 226-6686
Facsimile:  (713) 226-6286
slee@porterhedges.com
scates@porterhedges.com

*Attorneys for Defendant U.S. Well Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this Response will be delivered to all parties via the Court's electronic filing system and will also be sent to counsel of record via email on this 13th of November, 2015.

Joseph F. Scott (jfscld@yahoo.com)
Ryan A. Winters (rwinters@ohiowagelawyers.com)
Scott & Winters Law Firm, LLC
The Superior Building
815 Superior Avenue E., Suite 1325
Cleveland, OH 44114

Thomas A. Downie (tom@chagrinlaw.com)
46 Chagrin Falls Plaza #104
Chagrin Falls, Ohio 44022

/s/ Haley A. Paul
Haley A. Paul

11